IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 1:12-CR-169-MHT-WC |
| | ) | |
| JAMES TIMOTHY TURNER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S MOTION FOR DETENTION**

The United States of America, by and through its undersigned counsel, respectfully moves this Court to detain defendant James Timothy Turner ("Turner" or "Defendant") pursuant to Title 18, United States Code, Sections 3142(e) and (f).

1. <u>Eligibility of Cases</u>

This case is eligible for a detention order because this case involves:

| | |
|---|---|
| _____ | 10 + year crime of violence (18 U.S.C. § 3156) |
| _____ | 10 + year federal crime of terrorism (18 U.S.C. § 2332b(g)(5)(B)) |
| _____ | Maximum sentence of life imprisonment or death |
| _____ | 10 + year drug offense |
| _____ | Felony, with two prior convictions in the above categories |
| _____ | Felony involving a minor victim |
| _____ | Felony involving possession or use of a firearm or other destructive device (as defined by 18 U.S.C. § 921) or any other dangerous weapon |
| _____ | Failure to register as a sex offender (18 U.S.C. § 2250) |
| ___X___ | Serious risk the defendant will flee |
| ___X___ | Serious risk of obstruction of justice |

2. <u>Reason for Detention</u>

The Court should detain defendant because there are no conditions of release which will reasonably assure:

| | |
|---|---|
| __X__ | Defendant's appearance as required |
| __X__ | Safety of any other person and the community |

3. <u>Rebuttable Presumption</u>

The United States will invoke the rebuttable presumption against defendant under Section 3142(e).

| | |
|---|---|
| _____ | Previous conviction for "eligible" offense committed while on pretrial bond, and a period of five years has not elapsed from defendant's conviction or release from imprisonment for the offense described |
| _____ | Probable cause to believe defendant committed 10 + year drug offense or an offense in which a firearm was used or carried under Section 924(c) |
| _____ | Probable cause to believe defendant conspired to kill, kidnap, maim, or injure persons in a foreign country as prohibited under 18 U.S.C. § 956(a) |
| _____ | Probable cause to believe defendant committed act of terrorism transcending national boundaries (18 U.S.C. § 2332) or a 10 + year federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)(B)) |
| _____ | Probable cause to believe defendant committed 10 + year offense involving a minor victim |

4. <u>Time for Detention Hearing</u>

The United States requests the Court conduct the detention hearing:

| | |
|---|---|
| _____ | At the initial appearance |
| __X__ | After continuance of <u>3</u> days |

**I.     Background**

On September 12, 2012, a federal grand jury in the Middle District of Alabama returned a ten-count indictment against defendant James Timothy Turner ("Turner"). The indictment charges Turner with one count of Title 18, United States Code, Section 371 (Conspiracy to Defraud the United States), one count of Title 18, United States Code, Section 514(a)(2) (Fictitious Obligations), three counts of Title 18, United States Code, Sections 514(a)(2) and 2 (Aiding and Abetting Fictitious Obligations), one count of Title 26, United States Code, Section 7212(a) (Attempting to Interfere with Administration of Internal Revenue Laws), one count of Title 26, United States Code, Section 7203 (Failing to File a Tax Return for Tax Year 2009), and one count of Title 18, United States Code, Section 152(2) (False Statement Under Oath in a Bankruptcy Proceeding).

*Inter alia*, Turner is alleged to have promoted tax defier schemes throughout the United States through a nationwide seminar circuit, to have filed and assisted others in filing with the IRS fictitious "bonds" purporting to be worth large sums of money, to have instructed his followers to retaliate against IRS employees by filing fraudulent maritime liens threatening their personal property and assets, and to have threatened unspecified "recourse" against the Governor of Alabama if the Governor did not "resign within three days" to make way for a "sovereign" leader to take over.

Turner is the self-proclaimed "President" of the purported "Republic for the united States of America" ("RuSA"), one of the largest and most active sovereign citizen groups in the country. Based on his prior conduct, his explicit representations about the illegitimacy of the federal government and federal courts, and his known association with self-proclaimed "sovereign citizens" who have used violence and threatened violence against law enforcement officers, Turner is both a serious risk of flight and a serious danger to the community. *See* 18 U.S.C. § 3142(f)(2)(A) and (B). No condition or combination of conditions of pretrial release ordered by this Court will reasonably assure Turner's appearance at subsequent court hearings, much less reasonably assure

the safety of law enforcement and the community.  *See* 18 U.S.C. § 3142(f).

**II.     Legal Standard**

This Court "shall order" Turner's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight.  18 U.S.C. § 3142(e) (mandating that a court "shall order" pretrial detention where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community").  A finding of risk of flight must be supported by a preponderance of the evidence. *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985).  A finding of dangerousness must be supported by clear and convincing evidence.  *Id*.

**III.    Argument**

This Court should order defendant James Timothy Turner detained pending trial because he is both a serious risk of flight and a danger to the community, either one of which is sufficient to mandate pretrial detention.

A.     Risk of Flight

The United States is prepared to prove by a preponderance of the evidence that Turner is a serious risk of flight.  First, Turner has stated that he is not subject to federal jurisdiction or bound by federal law and Turner has established a shadow government of self-proclaimed "sovereign citizens" of which he holds himself out as the "President"; he is therefore highly unlikely to obey pretrial conditions of release, much less any order of this federal Court.  Second, Turner likely has access to cash and other assets, including silver, that can be easily converted to cash.  Third, Turner has explicitly stated an intention to flee the country in the event he is prosecuted.  And, fourth, Turner has obtained a United States passport with sovereign citizen identification and made plans to use that passport to travel internationally to Malta by means of a private jet, further underscoring both Turner's assertions about federal authority and Turner's apparent access to money and assets

not held in his name.

### 1. Federal Law and Turner's Shadow "Government"

The United States is prepared to prove at a detention hearing that Turner has stated to followers throughout the United States that the federal government is merely a "corporation" without any legitimate ability to enact or enforce laws on "sovereign" people. And, in turn, Turner has created a purported shadow "government" known as "RuSA." Turner regularly holds himself out as the "President of the united States." RuSA purports to have established its own court system, its own militant wing of so-called "rangers," and Turner and his followers have gone so far as to publicly demand by so-called "warrant" the resignation of all 50 state governors, threatening unspecified "recourse" for governors who did not resign within three days.

Based on Turner's assertions about federal authority and, in particular, the authority of federal courts, Turner is highly unlikely to follow an order by this Court setting forth conditions of release. Turner has demonstrated an absolute disdain for federal authority and he has espoused the purported belief that the federal government has no jurisdiction over him or other self-proclaimed "sovereign citizens." Accordingly, Turner is unlikely by any measure to obey any order of this Court, especially an order imposing limits on his ability to travel.

### 2. Access to Cash, Silver, and Assets Not in His Name

As alleged in the Indictment, Turner earned a substantial amount of money through a nationwide seminar circuit for which he charged people several hundred dollars *and* a pre-1964 silver dollar to attend. As such, Turner likely has access to an abundance of cash and countless valuable silver coins which he could easily convert to cash. With respect to flight, it would be impossible for this Court to "freeze" this likely hoard of cash and silver. This is particularly significant in that one of Turner's alleged co-conspirators, "M.E.," the self-proclaimed "Governor of Alabama," was caught in the midst of flight after he learned of a pending federal indictment

against him and "M.E." had made arrangements for hundreds of thousands of dollars of gold coins to be brought to him.

Furthermore, within the past year, as evidenced by Turner's application for a U.S. Passport submitted to the U.S. Department of State, Turner made plans to travel internationally to Malta by means of a private jet not in his name, reflecting the sheer fact that Turner appears to have access to money and resources not held in his name and not easily traceable to him – assets that he could use to flee the jurisdiction.

### 3.     Turner's Statements About Flight

The United States is prepared to present evidence that Turner explicitly stated to an individual in the Dothan area that he would consider fleeing to Mexico or elsewhere if charged with a federal offense in an effort to avoid prosecution. This representation by Turner is, in and of itself, sufficient to establish a likelihood of flight and grounds for pretrial detention, especially considering that Turner has now been charged with ten federal felonies carrying a possible substantial prison sentence if he is convicted.

### 4.     U.S. Passport

Turner has a United States passport which he obtained by, *inter alia*, submitting a sovereign citizen form of identification (he obtained a passport upon a finding that he is, in fact, a United States citizen). As such, there is no guarantee that, were his passport surrendered, Turner would not attempt to obtain yet another passport with fraudulent identification as he has in the past. This further underscores the fact that this Court's alternative methods of imposing conditions of pretrial release, which may include surrender of a U.S. Passport, would be insufficient to reasonably assure that Turner would not flee the country as he explicitly stated he would consider doing if faced with the circumstances he now faces.

B.   Danger to the Community

The United States is prepared to prove by clear and convincing evidence that Turner is a danger to law enforcement and to the community.  First,  Turner has participated in efforts to create a militant wing of RuSA known as "rangers" and, claiming to act in his capacity as "President," Turner has participated in the purported issuance of "arrest warrants" by RuSA's purported "court," thereby posing a serious threat to the safety and lives of individuals Turner has targeted.  Second, Turner has known ties to like-minded "sovereign citizens" who have engaged in violent shootouts with law enforcement officers.  Third, given Turner's absolute lack of respect for the authority of the federal government, any violation of pretrial conditions of release and subsequent issuance of an arrest warrant would pose an increased danger to federal law enforcement officers tasked with carrying out a subsequent arrest.  And, fourth, Turner has allegedly taught followers to retaliate against federal employees by filing patently fraudulent maritime liens in an effort to strip them of their property.

1.   **Turner's Involvement with Creating RuSA's Militant Wing**

The United States is prepared to prove that Turner has participated in creating a militant wing of RuSA known as "rangers," a group which purports to be the "law enforcement" wing of RuSA with the asserted ability to execute purported "arrest warrants," to imprison those targeted by RuSA and its sovereign "courts," and to use force under purported color of "sovereign law." Turner's conduct in this capacity poses a serious threat to those targeted by RuSA and its fictitious "courts," and a serious threat to the general public.

2.   **Turner's Ties to "Sovereign Citizens" Who Have Engaged in Violent Interactions with Law Enforcement Officers and Similar Conduct**

On May 20, 2010, two self-proclaimed "sovereign citizens," Jerry Kane, Jr. and his son, Joseph Kane, murdered two law enforcement officers in West Memphis, Arkansas, during a routine

traffic stop. As the United States is prepared to prove at a detention hearing, the Kanes were deeply immersed in the "sovereign citizen" movement and evidence obtained from the Kanes' computer links the Kanes directly to Turner. Likewise, in 2011, William Foust – a self-proclaimed "sovereign citizen" and active member of RuSA – allegedly engaged in an altercation with law enforcement in Arizona that resulted in Foust's death. As the United States is prepared to prove at a detention hearing, Foust – a self-proclaimed "justice" on RuSA's purported sovereign "Supreme Court" – and Turner had known ties to one another. And, on August 27, 2012, in Alaska, Lonnie and Karen Vernon – two self-proclaimed "sovereign citizens" with known associations to leaders of RuSA– pled guilty to participating in a revenge plot to murder a federal judge and an IRS employee in connection with a federal tax case. Furthermore, the United States is prepared to prove at a detention hearing that Turner appears to have assisted in harboring two federal fugitives from Hawaii.

### 3. Increased Danger to Law Enforcement if Released on Bond

As the United States is prepared to prove at a detention hearing, Turner has urged followers to stock up on food and supplies in preparation for what he has called the "transition" during which he claims the United States government will fall and Turner's purported shadow government will take over. Significantly, one of Turner's alleged co-conspirators, "M.E.," had accumulated a large stockpile of weapons, ammunition, food and other supplies by the time "M.E." was charged with federal offenses. And, Turner is known to regularly travel with armed associates. Thus, in the event this Court were to release Turner on pretrial bond, any subsequent need to arrest Turner would likely expose law enforcement tasked with that arrest to significant danger.

### 4. Retaliation Against Federal Employees

As alleged in the Indictment, Turner explicitly taught followers to retaliate against federal employees by filing patently fraudulent maritime liens in an effort to strip these employees of their

property and to intimidate them personally.  While certainly not as severe as violent retaliation, Turner's direct involvement in efforts to attack federal employees by filing false liens unquestionably poses a danger to the community – and constitutes sufficient grounds for detention.

**IV.     Conclusion**

As a matter of law, detention is appropriate where, as here, no condition or combination of conditions "will reasonable assure the appearance of" the defendant or "the safety of any other person and the community." 18 U.S.C. § 3142(f).  Turner is a serious risk of flight, he has espoused on numerous occasions purported beliefs that he is not subject to federal jurisdiction and not bound by federal law, and he poses a serious danger to law enforcement officers and to individuals targeted by his organization and its purported "sovereign courts."  It is highly unlikely that this self-proclaimed "President" of the purported "sovereign" nation would obey the orders of a federal court he has stated is "illegitimate."  Likewise, Turner's known association with individuals who have engaged law enforcement with violence, his assistance to other individuals who have fled federal authority, and Turner's explicit instructions to target federal employees by filing bogus liens against them further underscores the extent to which Turner poses a serious danger to the community.

Accordingly, the United States respectfully requests that this Court issue an Order detaining Turner pending trial in the above-captioned matter based on either the risk of flight prong or the danger to the community prong, or both prongs, of the pretrial detention statute.

Respectfully submitted this 18th day of September, 2012.

                                            SANDRA J. STEWART
                                            ACTING UNITED STATES ATTORNEY

                               By:    /s/ Justin Gelfand
                                         JUSTIN GELFAND
                                         GRAY BORDEN
                                         Attorneys for the United States

## **CERTIFICATE OF SERVICE**

 I hereby certify that on September 18, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                /s/ Justin Gelfand
                JUSTIN GELFAND
                Trial Attorney
                U.S. Department of Justice, Tax Division
                601 D Street, N.W.
                Washington, D.C. 20004
                (202) 514-5145
                justin.k.gelfand@usdoj.gov